[Civ. No. 10318.   First Appellate District, Division One.—November 30, 1936.]

In the Matter of the Estate of KATIE RICHARDS WEAR, Deceased.   THEODORE J. MILLER et al., Respondents, v. EDWARD ROLKIN, as Executor, etc., Appellant.

J. F. Riley for Appellant.

James M. Hanley, William B. Hornblower and Herbert Chamberlin for Respondents.

THE COURT.—This is an appeal by an executor from a decree settling his account.

The correctness of the account depends largely, if not entirely, on the question of whether the settlement thereof shall be controlled by certain written trust agreements entered into between the decedent and the executor some ten years prior to the decedent's death.   The circumstances leading up to the execution of said agreements and relating to the subsequent operation of the trust relationship created thereby were as follows: In 1920 Mrs. Wear, the decedent, who was then Mrs. Richards, owned considerable property in and

about Sonoma County. Much of it was situate in Agua Caliente, and consisted in part of a hotel and hotel cottages, against which there was a deed of trust, securing a promissory note for $27,800, and a mortgage securing a note for $3,525. The holders of these securities were demanding payment and threatening foreclosure, and Mrs. Wear was without funds to meet their demands. In that situation and on January 31, 1920, Mrs. Wear and appellant entered into a written trust agreement whereby appellant agreed to advance the necessary money to purchase the two notes above mentioned and the instruments given to secure payment of the same, in consideration of which Mrs. Wear agreed to pay said notes to appellant as provided therein; furthermore, she agreed that she would proceed to sell all of her properties in Sonoma County at a price satisfactory to appellant, and to apply all money received therefrom to the payment of said notes, unless appellant agreed to a different disposition of the proceeds of the sales. Continuing, the agreement provided that after said notes were liquidated all money received from said sales should be divided between them as follows: seventy-five per cent to Mrs. Wear and twenty-five per cent to appellant; and that if the lands were not sold within a period of six years from the date of said agreement, Mrs. Wear would convey to appellant an undivided one-fourth interest in the lands remaining unsold, free and clear of encumbrance, unless the parties in writing agreed otherwise. The agreement concluded with the stipulation that nothing therein should be construed as preventing foreclosure proceedings by appellant in the event of default in payment of said notes. In confirmation of said agreement appellant put up the amount of cash necessary to purchase the notes, trust deed and mortgage, and the same were assigned to him. Thereupon the parties proceeded to sell the properties and the proceeds of the sales were paid to appellant. On September 29, 1922, the hotel property was sold to Thomas H. Corcoran and wife, and in payment of the balance of the purchase price their note was taken for $40,000 secured by a deed of trust on the real property and a chattel mortgage on the hotel furnishings. The note, deed of trust and mortgage were made out to appellant and delivered to him, and he executed and delivered to Mrs. Wear a written declaration that he held the same only as security for the

money so advanced by him under the terms of the trust agreement. Thereafter numerous payments were made on the note by Corcoran, so that on December 31, 1927, the principal thereof had been reduced to $30,000. Mrs. Wear died on April 7, 1930, and at the time of her death the remaining unpaid balance on the Corcoran note was $26,000. Besides advancing the money necessary to acquire the outstanding obligations against the hotel property, appellant advanced other large sums to Mrs. Wear personally and for her use and benefit; and he kept an account book wherein he entered all of the items of receipt and disbursement relating to the operation of the trust, and this continued up to the time of Mrs. Wear's death. No final settlement of their accounts was ever had between appellant and Mrs. Wear, nor did they ever take any steps toward terminating the trust relationship.

Upon the death of Mrs. Wear appellant offered her will for probate, and a contest was filed thereto. Pending the determination of the contest appellant, who had been nominated in the will as executor, was appointed special administrator. The will was sustained; whereupon appellant, having been appointed executor, filed his final account as special administrator, and it was allowed and approved as filed. Approximately two years after his appointment as executor he rendered his account as such, wherein it was stated, among other things, that the amount of money coming into his hands at the time of his appointment was $1529.43; that the estate's interest in the unpaid balance of the Corcoran note, which at that time was $19,000, amounted to $8,740; and that the estate was the owner of an interest (without specifying the extent thereof) in three parcels of real property therein described. Two of the legatees under the will filed exceptions to the account, and especially to the items above enumerated, and it then became apparent that a determination of the issues thus raised with respect to the account could not be had until appellant's accounts as trustee were settled; whereupon, and on motion of the contestants, the court appointed a referee "to examine the accounts of said executor in his capacity as Trustee, as Special Administrator and as Executor and swear witnesses on said examination and make a report thereon, subject to the confirmation of this court". In pursuance to such appointment the referee submitted his

report, which was later supplemented by another report. In those reports he stated that the amount of cash coming into the hands of the executor at the time of his appointment was $5,395.75, and not $1529.43 as claimed by the executor; also that the estate's interest in the Corcoran note was $19,000 and not $8,740 as claimed by the executor. But in his report, as well as in giving his testimony in court in explanation of it, he clearly stated that in arriving at the above conclusions he had ignored entirely the provisions of the trust agreement whereunder it was agreed that after the payment of the notes which appellant had purchased he was entitled to one-fourth of all moneys received from the sale of lands, and at the end of six years was entitled to a deed to an undivided one-fourth interest in the lands remaining undisposed of. The reason assigned by the referee in his report for having prepared the same without giving any consideration to the terms of the trust agreement was that he did not feel competent to decide the question of the legal rights of the decedent and appellant thereunder; and in giving his testimony in explanation of his report he made it clear that if it had been prepared so as to give effect to the terms of the trust agreement, a different result would have been reached. The following is his testimony in this regard: "Q. Now, assuming the fact to be that on December the 31st, 1927—there is one other thing—you also did not take into consideration the agreement between Mr. Rolkin [the appellant] and Mrs. Richards by which under certain conditions he was to receive one-fourth of all moneys received did you? A. I did not. Q. Had that been taken into consideration, the results of your findings would have been very different, would they not? A. Yes, sir. Q. In other words, the findings as you have presented them, will have to be changed according to the ruling which the Court might make upon the application of that agreement—that is the fact? A. Yes, sir; I said in my report that I did not feel myself competent to rule on that question. . . . Q. Then, did you in your account after that time or in your calculations allow Mr. Rolkin any portion of the money received by him—that is, credit him with one-fourth of any portion? A. No, I did not credit him with one-fourth interest at any time. Q. At any time during any of your calculations? A. No. Q. Then, to go back to my other question, upon

the interpretation of this agreement would depend very largely the conclusion which would be reached, would it not? A. Undoubtedly. . . . Q. If, as a matter of fact, the Court should find that Mr. Rolkin was entitled to a fourth interest in the land, your account would have to be changed? A. Yes, sir, it would. . . . Q. Now, the fact is that as you have stated in your report, you have left up to the Court the determination as to the interpretation of the agreement between those two parties? A. Yes, sir, exactly. . . . Q. That is that the report which you have rendered is incomplete in this, that upon what the court determines the application of that agreement would be, would depend upon what your report would be? A. Exactly. Q. In other words, you did not take that into consideration at all and therefore your report is necessarily incomplete—that is the first one? A. Yes, sir. . . . Q. And that fully appears in every condition attached to the report that you rendered? A. Yes, sir. Q. And you left the determination of that point up to the court because you felt you were not competent to pass on that question of law? A. Exactly.'' And continuing, the referee stated that he would make the alternative calculations in the event the court ruled that the provisions of the trust agreement were controlling. But admittedly the court never did rule upon that question. Later it adopted the report as submitted and entered its decree of settlement accordingly. Moreover, the record discloses that subsequent to the submission of his reports made pursuant to his appointment by the court, the referee was employed by appellant to prepare a restatement of his account as trustee according to the provisions of the trust instrument, and the referee prepared such a report, but in doing so he departed from the method pursued by appellant in keeping the accounts in the book above referred to. In this respect the referee states in the beginning of his report: ''In this restatement I have departed from the method pursued by you in the keeping of your accounts, and have first applied all moneys received by you for her benefit against the notes: after the liquidation of said notes all receipts have been apportioned as provided in the agreement of January 31st, 1920, viz., seventy five per cent to Mrs. Richards and twenty five per cent to yourself; her seventy five per cent being credited against all other sums advanced by you to her on various occasions.

This procedure has been carried through to include your reports as Special Administrator and Executor of the estate of Katie Richards Wear deceased. . . . '' And the result obtained by such restatement is set forth at the end of the report as follows: ''At the time of death of Mrs. Katie Richards Wear, the amount due on the Corcoran note was $26,000.00. At the same time, assuming that the provisions of the agreement of January 1st, 1920, had been adhered to in the accounting, Mrs. Wear would be indebted to Mr. Rolkin, for moneys advanced by him and interest, in the sum of $21,560.73.'' In further explanation of the restatement of the account the referee testified: ''A. Mr. Rolkin asked me to make up a new account crediting the note that Mrs. Wear had signed with all of the receipts that came to him for her benefit until those notes were liquidated. After that I was to credit all further advancements that he had made to Mrs. Wear with her proportion as stated in the agreement of January 31st, 1920, wherein Mr. Rolkin was to get twenty-five per cent and Mrs. Wear seventy-five per cent. I was to credit Mrs. Wear's seventy-five per cent to further advancements. Q. That means that under the first account that you have rendered to this Court you left the interpretation of that agreement up to this Court? A. Certainly.'' And continuing the witness stated that the method of calculation followed by him in the preparation of the restatement was the one which should have been followed by appellant under the provisions of the trust agreement; and if so followed a result would have been obtained different from the one reached in the reports prepared under the court appointment.

It would seem, therefore, as appellant contends, that in the foregoing state of the record, it was essential for the court to determine and find first how far, if at all, the terms of the trust agreement were controlling in the settlement of the accounts between appellant as trustee and the estate, before the executor's account could be properly settled; and respondents concede that no such determination or finding was ever made. In this regard they say that since the court made its finding that the trust relationship existed, all it was called upon to do then was to determine the correctness of the account as presented, the amount of cash and property that should be on hand, and the extent of appellant's in-

terest therein, if any; and that the matter of determining the effect of the trust instrument of January 31, 1920, would come properly before the court at the hearing of the petition for final distribution. But respondents fail to explain by what process of calculation it was possible to correctly ascertain the amount of cash with which the executor should be charged or the extent of his interest in the remaining assets of the estate without first determining the legal question of whether appellant was entitled to the one-fourth share granted him under the terms of the trust agreement. Evidently the referee took the position it could not be done. It is our opinion, therefore, that in the absence of such determination, the decree of settlement does not rest on a sound basis.

It may be stated, however, in this connection, that we found no error in the court's ruling in disallowing the $300 fee claimed by appellant for services rendered in selling land under foreclosure proceedings, nor in the conclusion it reached as to the asserted oral settlement of December 31, 1927. Nor, assuming the terms of the trust agreement are in no manner controlling, can it be said that the court's findings are unsupported with reference to the amount of money coming into the hands of the executor at the time of his appointment, or as to the amount of the estate's interest in the Corcoran note. But, if upon further proceedings, it be determined that the rights of the parties, in the settlement of said accounts, shall be measured by the terms of said trust agreement, the findings as to these two latter items must necessarily be different.

For the reasons and upon the grounds stated, the decree of settlement is reversed.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 28, 1937.